| Not For Publication |

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| | | | |
|---|---|---|---|
| IN RE: | ) | CASE NO. | 09-31555 (LMW) |
| ROBERT OSTOP and LISA OSTOP, | ) | CHAPTER | 7 |
| DEBTORS. | ) | ECF NO. | 38 |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ROBERT OSTOP and LISA OSTOP,   )

       MOVANTS                                     )

  vs.                                                         )

FLEMMING HILL, LLC,                       )

       RESPONDENT.                          )

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**APPEARANCES**

| | |
|---|---|
| Ronald J. Piombino, Esq.<br>Burdick & Piombino, LLC<br>63 Wall Street<br>Madison, CT 06443 | Attorney for the Debtors/Movants |
| Lawrence H. Adler, Esq.<br>Adler Law Group, LLC<br>290 Roberts Street<br>East Hartford, CT 06108 | Attorney for the Respondent Flemming Hill, LLC |

**MEMORANDUM AND ORDER DENYING DEBTORS'
MOTION SEEKING RELIEF FOR VIOLATION OF AUTOMATIC STAY**

Lorraine Murphy Weil, Chief United States Bankruptcy Judge

The matter before the court is the above-referenced debtors' (the "Debtors") Motion Seeking Relief for Violation of Automatic Stay (ECF No. 38, the "Motion"). The court has jurisdiction over this contested matter as a core proceeding pursuant to 28 U.S.C. §§ 157(b) and 1334(b) and that certain Order dated September 21, 1984 of the District Court (Daly, J.).[1] This memorandum constitutes the findings of fact and conclusions of law required by Rule 7052 of the Federal Rules of Bankruptcy Procedure (made applicable here by Rule 9014 of the Federal Rules of Bankruptcy Procedure).

## I. PROCEDURAL BACKGROUND

The Debtors commenced this case by a petition filed on June 11, 2009. On July 15, 2009, the chapter 7 trustee filed a "Report of No Distribution," but did not follow procedures under 11 U.S.C. § 554 to abandon any property of the estate. On August 5, 2009, Connecticut Community Investment Corporation ("CT/CIC") filed a motion for relief from stay (ECF No. 21, the "R/S Motion") with respect to the Debtors' interest as lessees with respect to a certain lease (the "Lease," described more fully below) of premises known as 710-712 Boston Post Road, Madison, Connecticut (the "Property"). CT/CIC followed this court's "bar date procedure" (*see* ECF Nos. 23, 24 and 25) and, on September 1, 2009, an order (ECF No. 26) issued granting the R/S Motion. The Debtors received their respective chapter 7 discharges on October 7, 2009. (*See* ECF No. 37.)

The Debtors filed the Motion on October 8, 2009. The Motion alleges that the above-referenced respondent ("Flemming Hill") violated the automatic stay in this case when, postpetition, it caused the lock(s) for the Property to be changed and also withheld from the Debtors certain of

---

[1] That order referred to the "Bankruptcy Judges for this District" "all cases under Title 11, U.S.C., and all proceedings arising under Title 11, U.S.C., or arising in or related to a case under Title 11, U.S.C. . . . ."

their personal property (the "Debtor Property") located at the Property. An evidentiary hearing (the "Hearing") on the Motion was convened on February 8, 2010 and was continued and concluded (subject to mandatory post-trial briefing) on May 25, 2010.

At the Hearing, each of the Debtors and Christopher Hill (member of Flemming Hill)[2] was called as a witness by the Debtors, and Charles Harris (a vice-president of CT/CIC) was called as a witness by Flemming Hill. Each side entered documentary evidence into the record.[3] The matter has been briefed and argued and now is ready for the disposition ordered below.

## II.  APPLICABLE LAW

Bankruptcy Code § 362(a)(3) provides in relevant part as follows:

> [A] petition filed under section 301 . . . operates as a stay, applicable to all entities, of –
>
> . . .
>
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate . . . .

11 U.S.C.A. § 362(a) (West 2010). "[A] mere possessory interest in real property, [even] without any accompanying legal interest, is sufficient to trigger the protection of the automatic stay. That is because a debtor's bare possessory interest in realty is property of the estate that is protected by the automatic stay even if the realty itself is not property of the estate." *Fed. Nat'l Mortg. Ass'n v. Fitzgerald (In re Fitzgerald),* 237 B.R. 252, 258 (Bankr. D. Conn. 1999) (citations and internal quotation marks omitted; modification added).

---

[2]  Mr. Hill is a retired attorney who "owns" eight rental properties (twenty rental units in total). (*See* ECF No. 54 at 4-5 (testimony of Mr. Hill).)

[3]  The Debtors' exhibits hereafter are referred to in the following form: "Debtors Exh. ___." Flemming Hill's exhibits hereafter are referred to in the following form: "Respond. Exh. ___."

- 3 -

Bankruptcy Code § 362(k)(1) provides in relevant part as follows: "[A]n individual injured by any willful violation of a stay provided by [Section 362(a)] . . . shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C.A. § 362(k) (West 2010).

> Section 362(k)
>
> does not impose damages for any violation of the automatic stay, but only those that are within its statutory definition, *i.e.,* "deliberate" actions that are "willful". §362(h);[4] *see also Crysen/Montenay Energy Co. v. Esselen Assoc., Inc.*, 902 F.2d 1098, 1105 (2d Cir. 1990); *Salem v. Paroli*, 260 B.R. 246, 257 (S.D.N.Y. 2001), *aff'd,* 79 Fed.Appx. 455, 456, 2003 WL 22440245 (2d Cir. 2003) (applying *Crysen, supra*, 902 F.2d at 1104) ("although we find that there was a violation of the automatic stay, we find neither willfulness nor malice in that action, and affirm [the] Judge['s] order [dismissing the adversary proceeding]"). Thus, the focus of this controversy is narrowed to whether, as *Crysen* holds, there was a "deliberate act taken . . . in violation of a stay, which [the creditor] kn[ew] to be in existence [that] justifies an award of actual damages". *Crysen, supra*, 902 F.2d at 1105.

*James v. Silver Ridge Condo. Ass'n, Inc. (In re James),* 367 B.R. 259, 262 (Bankr. D. Conn. 2007) (Shiff, J.) (fifth and sixth modification added).

## III.   FACTS

The Debtors entered into the Lease with Flemming Hill on or about June 29, 2005. (*See* Debtors Exh. 3.) However, through some sort of an informal arrangement, the Debtors' affiliate, The Madison Gourmet Beanery, LLC (the "LLC"), conducted its business (the "Business") on the Business Premises (as hereafter defined). (*See* ECF No. 49 at 6-7(testimony of Mr. Ostop).)[5] On

---

⁴       Subsection (h) of Section 362 was redesignated as subsection (k) by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. (*See* Pub. L. No. 109-8, § 305, 119 Stat. 23, 79 (2005).)

⁵       The LLC operated a bakery/restaurant/coffee shop on the Property. (*See* ECF No. 49 at 6 (testimony of Mr. Ostop).) That portion of the Property within which the Business was operated hereinafter is referred to as the "Business Premises."

or about June 16, 2005, the LLC, as maker and debtor, executed and delivered a certain Note and Security Agreement (the "Loan Agreement") to CT/CIC, as lender. (*See* Respond. Exh. A.) The loan (the "Loan") evidenced by the Loan Agreement was in the original principal amount of $35,000.00. (*See id*.) Pursuant to the Loan Agreement, the LLC granted to CT/CIC a security interest in certain of the LLC's personal property (the "Collateral") to secure the Loan. (*See id.*)[6] In connection with the Loan, the Debtors, as guarantors, executed and delivered to CT/CIC, as beneficiary, their guaranty of the Loan. (*See* Respond. Exh. G, the "Guaranty.") Also in connection with the Loan, the Debtors executed and delivered to CT/CIC an assignment (the "Assignment") of the Lease to be enforced upon default under the Guaranty. (*See* ECF No. 54 at 61 (testimony of Mr. Harris).)

By June of 2009, the Debtors were behind on the rent due under the Lease, and the LLC (and the Debtors) were in default with respect to the Loan. (*See* ECF No. 54 at 8-9 (testimony of Mr. Hill); *id.* at 62 (testimony of Mr. Harris); Respond. Exh. I (unexecuted Forbearance Agreement).) As noted above, the Debtors commenced this chapter 7 case on June 11, 2009.[7] Flemming Hill and CT/CIC both received notice of the case commencement. (*See* ECF No. 8.) The LLC ceased operating the Business on the Business Premises on June 11, 2009 "per order of Barbara Katz, the Trustee of the bankruptcy," (ECF No. 49 at 7:13-14 (testimony of Mr. Ostop)). At that time, Mr. Ostop put one or more out-of-business signs (collectively, the "Sign") in the window(s) of the Business Premises thanking "everyone for their love, friendship and respect and being part of our

---

[6] For present purposes, the court assumes (but does not decide) that the Debtor Property is not CT/CIC's collateral in respect of the Loan or the Guaranty (as hereafter defined).

[7] The LLC commenced a chapter 7 case on the same day. (*See* Case No. 09-31545 docket.) That case was closed without a distribution to creditors on October 7, 2009. (*See id.*)

family in the past 17 years. It's been a pleasure and a lot of fun. You will be . . . [dearly] missed." (*Id.* at 35:16-20 (testimony of Mr. Ostop).) The Sign was signed by the "group." (*See id.* at 35-36 (testimony of Mr. Ostop).)

Just prior to shutting down the Business (and perhaps just prior to the chapter 7 filings), the Debtors went to Restaurant Depot and completely stocked the Business. (*See* ECF No. 49 at 24 (testimony of Mr. Ostop).) On more than one postpetition occasion prior to early August, 2009, the Debtors returned to the Business Premises to clean out some "time-sensitive [food] product" and some Debtor Property. (*See id.* at 7-8 (testimony of Mr. Ostop).) However, Mr. Hill was not aware of the foregoing. (*See* ECF No. 54 at 26 (testimony of Mr. Hill).)[8] The Debtors did not bake bread at the Business Premises after the Business shut down. (*See* ECF No. 49 at 32-33 (testimony of Mr. Ostop).)

On or about June 8, 2009, CT/CIC purported to "exercise its rights" under the Assignment to take the Debtors' place as lessee under the Lease. (*See* Respond. Exh. I.) Mr. Hill was notified of the foregoing. (*See* ECF No. 54 at 12 (testimony of Mr. Hill); Respond. Exh. D.) It is uncertain whether the Debtors received similar notice. CT/CIC began paying rent to Flemming Hill under the Lease (beginning with rent for the June "stub" period). (*See* ECF No. 54 at 16, 29-30 (testimony of Mr. Hill).) Until power was shut off on July 31, 2009, the utilities for the Business Premises remained in the Debtors' names. (*See id.* at 28 (testimony of Mr. Hill).) As a result of the power

---

[8] Mr. Hill testified that on one occasion he saw Mrs. Ostop removing "stuff" from the Business Property and that he talked to her. However, he did not remember if that occasion was postpetition nor did he remember the substance of the conversation. (*See* ECF No. 54 at 51-52 (testimony of Mr. Hill).) For the purposes of this memorandum, Mr. Hill's actions, state of mind and intent are imputed to Flemming Hill.

shut off, there was no electricity for refrigeration or other needs at the Business Premises. (*See id.* at 28-29 (testimony of Mr. Hill).)

Around the end of July, 2009, Mr. Hill was contacted by a residential tenant on an upper floor of the Property (a female tenant who lived alone). (*See* ECF No. 54 at 7 (testimony of Mr. Hill).) That tenant complained to Mr. Hill that she was hearing strange noises coming from the Business Premises at night and was concerned for her safety. (*See id.* at 7, 23 (testimony of Mr. Hill).) After Mr. Hill called the police, he went to the Property to investigate. (*See id.* at 24 (testimony of Mr. Hill).) The Sign still was there and Mr. Hill saw it. (*See id.* at 29 (testimony Mr. Hill).) He did not have a key to the Business Premises. (*See id.* at 24 (testimony of Mr. Hill).) He pushed on the front door to the Business Premises. The door was unlocked and opened to his touch. (*See id.* (testimony of Mr. Hill).) Mr. Hill did not know that there was any Debtor Property on the Business Premises. (*See* ECF No. 54 at 7-8 (testimony of Mr. Hill).) Mr. Hill spoke to Mr. Harris by telephone and they agreed that the best course of action under the circumstances would be to change the locks on the Business Premises. (*See id.* at 25 (testimony of Mr. Hill).) However, Mr. Hill would be out of the country on vacation when the locksmith came to the Business Premises. Accordingly, with Mr. Hill's consent Mr. Harris supervised the changing of the locks. (*See id.* at 25 (testimony of Mr. Hill); *id.* at 70 (testimony of Mr. Harris).) The locks were changed from the inside without breaking the door down or drilling. (*See* ECF No. 55 at 8 (testimony of Mr. Harris).) Mr. Harris kept a set of the keys to the new locks and gave a set to Mr. Hill's attorney/secretary. (*See* ECF No. 54 at 82

(testimony of Mr. Harris).)[9] It is uncontested that the Debtors were not given a set of keys for the Business Premises.

When Mr. Harris arrived at the Business Premises to change the locks, he saw the Sign. (*See* ECF No. 54 at 72 (testimony of Mr. Harris).) He also saw that "there was food visible that should be wrapped and . . . there were sheet pans with cookies still on them. Stuff that was out all that time . . . ." (*Id.* at 71:2-6 (testimony of Mr. Harris).) There was a lot of rotten food in the refrigerator. (*See id.* at 72 (testimony of Mr. Harris).)

CT/CIC continued to pay rent for the Business Premises "until a subsequent tenant was put in there by . . . [CT/CIC]," (ECF No. 54 at 30:8-9 (testimony of Mr. Hill). Some time after the "lock change," CT/CIC obtained a new tenant (the "New Tenant") for the Business Premises. (*See id.* at 47 (testimony of Mr. Hill).)[10] CT/CIC sold the Collateral to the New Tenant. (*See* ECF No. 55 at 22 (testimony of Mr. Harris).) It is possible (but not proved) that CT/CIC also may have purported to sell certain of the Debtor Property to the New Tenant.

The Debtors called Mr. Hill about the Debtor Property in late August or early September, 2009. (*See* ECF No. 54 at 26-27 (testimony of Mr. Hill).) He told the Debtors to call CT/CIC. (*See id.* at 27 (testimony of Mr. Hill).) However, subsequently Mr. Hill asked the New Tenant about the Debtor Property. (*See id.* at 30 (testimony of Mr. Hill).) In response, the New Tenant produced

---

[9] As noted above, the R/S Motion was filed at around the time of the "lock change." However, Flemming Hill did not receive notice of that proceeding. (*See* ECF Nos. 21, 24.) Moreover, the record does not support a finding that Mr. Hill knew about the R/S Motion at the time of the "lock change."

[10] The New Tenant was a Mr. Jeff Allen. (*See* ECF No. 55 at 23 (testimony of Mr. Harris).) Mr. Allen was a former employee of the LLC. (*See* ECF No. 55 at 31 (testimony of Mr. Harris).) The procedure by which Mr. Allen became the New Tenant was not explained.

certain property which Mr. Hill (or his attorney) made available to the Debtors for pickup. (*See id.* (testimony of Mr. Hill).) However, the Debtors were not satisfied with either the adequacy of that production or the manner in which the property so produced was made available to them.

## IV.   APPLICATION OF LAW TO FACT

At the Hearing, the Debtors argued that CT/CIC's purported prepetition enforcement of the Assignment was insufficient to have terminated the Debtors' interest in the Lease prepetition. Observing that "[t]his is not something I'm going to figure out myself," the court directed the parties to brief the issue of "whether the [the Debtors] . . . were stripped of their rights in the . . . real property . . . prepetition." (ECF No. 55 at 76:16-23 (court's remarks).) The brief filed by the Debtors (ECF No. 51) is unhelpful on the postpetition status of the Lease. Accordingly, they are deemed to have waived that issue. However, that waiver does not moot the Motion. That is because the court assumes (but does not decide) that the Debtors still had bare but sufficient possession of the Business Premises as of the time of the "lock change" to warrant the protection of the automatic stay.

Based upon the foregoing, the court assumes (but does not decide) that a technical violation of the automatic stay occurred when Flemming Hill agreed to change the locks on the Business Premises. However, the court concludes that the requisite "deliberate act taken . . . in violation of a [known] stay," *James,* 367 B.R. at 262, has not been proven. The court credits Mr. Hill's testimony as to his belief that the Debtors no longer were in possession of the Business Premises (*i.e.,* the Debtors had abandoned the Business Premises) at the time of "lock change." Based on the evidence, the court finds his belief to have been reasonable. Accordingly, based on this record, the court is not persuaded that Mr. Hill either knew or had reason to know that the Debtors still retained

possession of the Business Premises as of the time of the "lock change." With respect to the Debtor Property, Mr. Hill played no part in what happened to it after the "lock change" except with respect to his efforts to retrieve it for the Debtors. Those efforts were an accommodation to the Debtors and not a violation of stay.

### V.  CONCLUSION

For the reasons stated above, the Motion shall be and hereby is **DENIED.**

It is **So ORDERED**

Dated: December 1, 2010                                            BY THE COURT

*Lorraine Murphy Weil*
Lorraine Murphy Weil
Chief United States Bankruptcy Judge